IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT AT ROANOKE, VA
FILED
9/23/2026
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

ANTONIA NICOLE WELLS, )
)
Plaintiff, ) Civil Action No. 5:26-cv-00058
)
v. ) **MEMORANDUM OPINION**
)
JUST CLICK TRANSPORT, INC., *et al.*, ) By: Hon. Thomas T. Cullen
) United States District Judge
Defendants. )

---

On May 5, 2026, Plaintiff Antonia Wells ("Wells") filed this action against Defendants Just Click Transport, Inc. ("Just Click"), Simpriet Kaur ("Kaur"), DSI Bulk Transport Company, Inc. ("DSI"), Duriel Austin Harris ("Harris"), and Kyleigh Goforth ("Goforth"). (*See generally* Compl. [ECF No. 1].) This action arises from injuries that Wells sustained in 2024 during a multi-vehicle accident on Interstate-81 ("I-81") in Frederick County, Virginia. (*Id.* ¶¶ 1, 35.) Defendants Harris and DSI's have filed a partial motion to dismiss.[1] (Def. Mot. Dismiss [ECF No. 8].) For the reasons stated below, the court will grant the motion.

## I. BACKGROUND

The facts are recited as Wells alleges in her complaint and, at this stage, the court accepts the allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the court only recites the facts as relevant to Harris and DSI's partial motion to dismiss.

Harris is a professional freight driver who, at the time of the accident, drove a tractor-trailer "owned, maintained[,] and controlled" by his employer, DSI. (Compl. ¶¶ 19–20.) DSI

---

[1] On June 18, 2026, Harris and DSI also filed an answer addressed to the claims they do not challenge at this stage. (ECF No. 10.)

is an interstate motor carrier and transporter of goods, authorized by the U.S. Department of Transportation and the Federal Motor Carrier Safety Administration and permitted to operate in Virginia. (*Id.* ¶¶ 24–26.) Harris had received "specialized safety training in operating a tractor-trailer truck" prior to the date of the accident. (*Id.* ¶¶ 57, 60.)

On October 25, 2024, Wells was operating her vehicle on I-81 near an offramp-exit in Frederick County. (Compl. ¶¶ 35, 41.) There, I-81 is a three-lane highway, and the far-right lane is the exit lane. (*Id.* ¶ 37.) Wells alleges that she was operating her vehicle in the middle lane, but traffic was heavy. (*Id.* ¶¶ 36, 41, 62, 63.) As cars attempted to move into the exit lane, Wells slowed her vehicle. (*Id.* ¶¶ 42, 39.) Another truck driver (Defendant Kaur) was immediately behind Wells in another company's tractor-trailer truck. (*Id.* ¶ 43.) According to Well, Kaur did not slow down when she did and, as a result, rearended her vehicle, pushing it across the far-left lane, just in front of where another driver (Defendant Goforth) and Harris were driving, and ultimately into the median. (*Id.* ¶¶ 44–45, 50.)

Wells alleges that Harris saw the collision but "did not reduce his speed." (*Id.* ¶ 48.) Instead, he "maintained his speed" and drove the DSI truck "off the roadway to the left." (*Id.* ¶ 49.) After Kaur pushed Wells into the median, Harris "T-boned" Wells. (*Id.* ¶ 50.) Goforth then struck Wells's vehicle.[2] (*Id.* ¶ 53.)

Wells alleges that Harris "consciously disregarded" his training and "the safety of motoring public" by not using "proper visual search methods." (*Id.* ¶ 59.) As a result, she states

---

[2] Wells's allegations regarding Harris's position relative to the other defendants in the far-left lane, as well as who hit Wells first, are somewhat vague. (*See generally* Compl.) But for the purposes of evaluating Harris and DSI's motion to dismiss, the key facts—that Harris was in the far-left lane, moving in the same direction as Wells, witnessed the collision between Wells and Kaur, then collided with Wells's vehicle—are sufficient for the court's analysis.

that she has suffered "severe, painful, and in part permanent injuries," both physical and emotional,[3] and has "further sustained lost income, loss of earning capacity, and other economic losses." (*Id.* ¶ 172.)

On May 5, 2026, Wells initiated this action against all Defendants.[4] (*See generally id.*) In total, she brings 10 claims. As is relevant to the present motion, she alleges negligence and negligence *per se* against Harris (Count 5 and 6); vicarious liability against DSI based on Harris's negligence (Count 7); and direct negligence against DSI (Count 8). (*Id.*) Wells seeks compensatory damages and punitive damages from all Defendants. (*Id.* Demand.)

On June 18, 2026, Harris and DSI filed a partial motion to dismiss Counts 5, 6, and 8, arguing that Wells "failed to state claims for willful and wanton negligence against [them]" and is "not entitled to punitive damages."[5] (Def. Mot. Dismiss at 1; *see* Def. Br. Supp. Mot. Dismiss ("Def. Br.") [ECF No. 9].) Harris and DSI also argue that Wells "failed to state any direct claims of negligence against [DSI] premised upon alleged negligent 'hiring, qualifying, training, entrusting, supervising, and/or retaining' of [Harris]." (*Id.*) The matter is fully briefed, and it is ripe for disposition.

---

[3] Immediately after the accident, Wells was transported to the Winchester Medical Center and received 13 staples to treat a head injury. (Compl. ¶ 172.) Following the accident, she has needed treatment and ongoing care, which has resulted in continuing medical expenses. (*Id.*)

[4] Wells brings this action on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332. (Compl. ¶ 31.)

[5] Insofar as Counts 5, 6, and 8 assert simple and/or gross negligence claims, those do not appear to be challenged at this stage. Harris and DSI seem to admit as much in their motion to dismiss wherein the request "an order dismissing, with prejudice, any claims for willful and wanton negligence (and the accompanying claim for punitive damages) . . . ." (Mot. to Dismiss at 2 [ECF No. 8].)

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). When evaluating the sufficiency of a complaint, the court is obligated to consider the factual allegations asserted in the complaint as well as any exhibits attached thereto. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)).

## III. ANALYSIS

DSI and Harris move to dismiss (1) the willful and wanton negligence claim against Harris and (2) the direct negligence claim against DSI. (Def. Br. at 2–7.) The court will address each claim in turn.

**A. Willful and wanton negligence against Harris**

Virginia law recognizes three types of negligence: (1) ordinary; (2) gross; and (3) willful and wanton.[6] *See Kuykendall v. Young Life*, 261 F. App'x 480, 488 (4th Cir. 2008). Willful and wanton negligence differs as "a matter of kind" from negligence or gross negligence because "[n]egligence conveys the idea of heedlessness, inattention, inadvertence; willfulness and wantonness conveys the idea of purpose or design, actual or constructive." *Green v. Ingram*, 608 S.E.2d 917, 923 (Va. 2005) (quoting *Boward v. Leftwich*, 89 S.E.2d 32, 35 (Va. 1955)) (cleaned up). To state a claim for willful and wanton negligence, a plaintiff must allege that a defendant "act[ed] consciously in disregard of another person's rights or act[ed] with reckless indifference to the consequences, [and with an awareness] from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Cowan v. Hospice Support Care*, 603 S.E.2d 916, 919 (Va. 2004); *see also Wilson v. O'Dell,* No. 4:23-cv-00020, 2024 WL 4960019, at *3 (W.D. Va. Dec. 3, 2024); *Alfonso v. Robinson*, 514 S.E.2d 615, 618 (Va. 1999) (citing *Infant C. v. Boy Scouts of Am., Inc.*, 391 S.E.2d 322, 327 (Va. 1990)). A willful and wanton negligence claim typically requires "egregious" behavior "going beyond that which shocks fair-minded people." *Harris v. Harman*, 486 S.E.2d 99, 102 (Va. 1997); *see Dowdy v. Pamunkey Reg'l Jail Auth.*, No. 3:14-cv-003, 2014 WL 2002227, at *5 (E.D. Va. May 15, 2014).

In the traffic context, "egregious conduct" frequently requires some combination of intoxication, excessive speeding, falling asleep at the wheel, disregard for known dangers, and/or malice or intent to harm. *See e.g., Webb v. Rivers*, 507 S.E.2d 360, 363 (Va. 1998) (finding

[6] Virginia law uses the terms "willful and wanton negligence" and "willful and wanton conduct" interchangeably. *See Infant C.*, 391 S.E.2d at 327–28; *Curtis v. Highfill*, 840 S.E.2d 321, 324 (Va. 2020).

sufficient facts for a jury to infer a conscious disregard of others because the driver was so intoxicated he was unaware of his surroundings, drove 90-miles-per-hour in a 25-miles-per-hour neighborhood, and drove through a red light). But these factors alone, or even some combination thereof, are not always sufficient to state a willful and wanton negligence claim. *See, e.g.*, *Clohesssy v. Weiler*, 462 S.E.2d 94, 96 (Va. 1995) (holding that the defendant's speeding without headlights at night with fogged windows and limited vision in a residential area with known pedestrian traffic, even when considered together, did not warrant jury instructions for willful and wanton negligence); *Allstate Ins. Co. v. Wade*, 579 S.E.2d 180, 187 (Va. 2003) ("[M]ere intoxication would be insufficient to establish willful and wanton conduct."); *Doe v. Isaacs*, 579 S.E.2d 174, 178–79 (Va. 2003) (reversing award of punitive damages for willful and wanton conduct because, even though defendant was likely intoxicated and feloniously fled the scene, he was driving on the correct side of the road and there was no evidence of speeding). "[T]he sufficiency of a claim of willful and wanton negligence must be evaluated on its own facts." *Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003) (citing *Alfonso*, 514 S.E.2d at 618; *Harris*, 486 S.E.2d at 102; *Huffman v. Love*, 427 S.E.2d 357, 359 (Va. 1993)).

Critically, "intentional moving traffic violations" are not considered egregious conduct. *Harris*, 486 S.E.2d at 102. In *Harris*, for example, the Virginia Supreme Court held that a driver who follows too closely behind the car in front of him despite known hazardous road conditions was insufficient to substantiate a willful and wanton negligence claim. *Id.* at 101. Instead, as discussed above, the court opined that additional factors must be present to establish "egregious conduct," such as

> driv[ing] with a significantly high blood alcohol content, involved in an accident after a prior collision with another car, exceeding

> the speed limit, driving in the wrong lane, and leaving the scene of the accident . . . [or] a driver intentionally chasing and running into a bicyclist in a dispute over money.

*Id.* at 102 (first citing *Huffman*, 427 S.E.2d at 359, then citing *Friedman v. Jordan*, 184 S.E. 186, 187 (Va. 1936)).

Here, at best, Wells alleges only intentional moving traffic violations. According to Wells, after witnessing the collision with Kaur, Harris drove his tractor-trailer off the roadway and maintained his speed, which was "too fast for the traffic conditions." (Compl. ¶¶ 49, 58.) Notably, she does not allege that Harris was intoxicated, acted with malice, or was even exceeding the speed limit. At bottom, the allegations suggest that Harris, perhaps negligently, hit Wells while reacting to an emergency—far from the egregious conduct required to state a claim for willful and wanton conduct. *See Raskauskas v. Leith*, No. 13-1105, 2013 WL 4659783, at *2 (D. Md. Aug. 29, 2013) ("[O]ne who is apparently guilty of negligence excuses his apparent negligence by asserting that he acted in an emergency and that what in other circumstances would have been negligence is not negligence in view of the emergency." (citation omitted)). Without more, Wells's allegations do not establish that Harris "had conscious awareness of the danger, and probable causes of his actions, and recklessly decided to proceed notwithstanding that awareness." *Green*, 608 S.E.2d at 924.

Wells's additional arguments do not save her claim. First, she argues that Harris's status as a professional truck driver with specialized safety training subjected him to a stricter duty, such that violations of that duty amount to more extreme conduct. (Compl. ¶¶ 57–60, 115–21, 127; Pl.'s Opp'n at 6–7.) To be sure, another judge in this court has held that "truck drivers are held to a higher standard because they are covered by federal regulations and often receive

additional safety training." *Laprosek v. Burress*, No. 7:18-cv-527, 2019 WL 6718098, at *6 (W.D. Va. Dec. 10, 2019) (Dillon, J.) (citing *Madison v. Acuna*, No. 6:12-cv-00027, 2012 WL 6196450, at *3 (W.D. Va. Dec. 12, 2012)) (finding willful and wanton conduct where truck driver, while drunk, hit a rumble strip, "swerv[ed] all over the road[,]" ignored warnings from other drivers and his co-driver, and ran another driver off the road before an accident); *see also Vasterling*, 2026 WL 161895, at *3 (noting that specialized training—in certain circumstances—can put the defendant on notice of egregious conduct when they fail to follow safety protocols). But Harris's heightened duty is not dispositive, and Wells's claim "must be evaluated on its own facts." *Woods*, 574 S.E.2d at 268.

Even in light of his heightened duty, Wells alleges that Harris *responded* to the potential danger—he was not the catalyst for the dangerous conditions. That distinction separates this case from others where courts have found wanton and willful conduct. *See, e.g.*, *Alfonso*, 514 S.E.2d at 615–17, 619 (finding willful and wanton conduct where truck driver "consciously elected to leave [a] disabled truck in a travel lane of an interstate highway [in the dark] without placing any warning devices behind it"). Even accepting as true that Harris departed from his safety training by driving too fast for the conditions, Wells's allegations establish that he did so in an attempt to evade a collision witnessed only seconds before—an act that falls far short of a "conscious disregard" for safety. *See McCann v. Everette*, No. 3:21cv69, 2021 WL 1951130, at *1, *11 (E.D. Va. May 14, 2021) (dismissing a willful and wanton negligence claim against a truck driver who drove at "full speed," despite warnings of slow traffic, because the plaintiff did not allege additional facts such as intoxication, driving in the wrong lane, or exceeding the speed limit). To recognize otherwise would unduly impose heightened liability—the kind

reserved for the most egregious of actors—in situations where Virginia has otherwise declined to impose them.

Finally, Wells contends that Harris's alleged negligence *per se* violations[7] create an "aggravating layer" that amount to a conscious disregard for safety. (Compl. ¶¶ 122, 124.) The Virginia Supreme Court, however, has cast doubt on this argument, reasoning that

> adopting [t]his analysis would turn every intentional moving traffic violation into a case of willful and wanton negligence. Traffic laws are established for the safety of those who are on the public roads. Every time a driver intentionally violates a traffic law, by definition, the violator is on notice that other users of the road may be injured as a result of his violation. Such conduct alone, however, does not have the characteristics of conduct generally classified as willful and wanton.

*Harris*, 486 S.E.2d at 101–02. In any event, acts of negligence or gross negligence—even on repeated instances—ordinarily constitute a different type of liability than willful and wanton conduct. *See Infant C.*, 391 S.E.2d at 327 ("Gross negligence and ordinary negligence differ from one another only in degree, but the species of tortious conduct which the authorities have variously labelled willful and wanton conduct, or reckless misconduct, or willful and

---

[7] Wells alleges several instances of Harris's negligence *per se*, but they do not establish willful and wanton conduct. First, Wells alleges violations of 49 C.F.R. § 383.111 (required safer-driving knowledge for commercial vehicle operators), Va. Code Ann. § 46.2-816 (following too closely), and Va. Code Ann. § 46.2-852 (improper driving/failure to maintain control). (*See* Compl. ¶ 124(a).) But even if Harris did violated these laws and regulations, Wells cannot bootstrap these allegations to establish that Harris drove his truck into the median *knowing* it would probably result in harm to meet the standard for willful and wanton conduct. The elements of negligence *per se* do not require purpose or intention. *See Collett v. Cordovana*, 772 S.E.2d 584, 589 (Va. 2015). Second, Wells alleges that Harris violated 49 C.F.R. § 392.14, which requires "extreme caution" in "hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust or smoke, adversely affect visibility or traction." (Compl. ¶ 124.) The court is skeptical of the applicability of this regulation to the facts of this case, because Wells does not allege that there were hazardous weather conditions at the time of the accident. (*See generally* Compl.) Moreover, the Fourth Circuit and the Virginia Supreme Court have stated that, under Virginia law, "this regulation establishes the duty of care for a tractor[-]trailer driver operating under hazardous conditions. Violation of the regulation 'does not constitute negligence *per se*'; rather, the regulation creates 'an expanded duty of care for the operation of commercial motor vehicles.'" *Le Doux v. W. Express, Inc.*, 126 F.4th 978, 986 (4th Cir. 2025) (quoting *Kimberlin v. PM Transp., Inc.*, 563 S.E.2d 665, 668–69 (Va. 2002)).

intentional conduct, differs in kind from both of them."). The authorities upon which Wells relies to bolster her argument are unpersuasive, as they concerned scenarios that vastly different from Harris's split-second response to a neighboring collision. *See, e.g.*, *Allstate*, 579 at 187 (finding defendant actions were willful and wanton because, knowing that he and his driver were heavily intoxicated and could harm someone, he still encouraged his driver to "speed up" along narrow, curvy roads).)

Because Wells has failed to allege "egregious conduct" beyond intentional traffic violations, the court will dismiss the claim of willful and wanton negligence against Harris. In doing so, the court necessarily must dismiss Wells's claim for punitive damages against Harris as well.[8] In Virginia, "[a] claim for punitive damages at common law in a personal injury action must be supported by factual allegations sufficient to establish that the defendant's conduct was willful or wanton." *Woods*, 574 S.E.2d at 268; *Laprosek*, 2019 WL 6718098, at *5 ("Virginia has 'repeatedly stated that an award of punitive damages is not favored generally because punitive damages are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct.'" (quoting *Madison*, 2012 WL 6196450, at *3)); *Brown v. Cox*, No. 2:11cv184, 2011 WL 5438610, at *2 (E.D. Va. Nov. 8, 2011); *In re Edwards*, 607 B.R. 530, 538 (Bankr. W.D. Va. 2019); *Coalson v. Canchola*, 754 S.E.2d 525, 528 (Va. 2014). Because Wells has failed to allege the required predicate of a willful and wanton claim, she cannot establish that she is entitled to punitive damages against Harris.

---

[8] Wells has alleged willful and wanton conduct by other Defendants, and if proven, punitive damages may be recoverable from them.

**B. Negligence against DSI**

Wells also alleges a claim against DSI for negligent "hiring, qualifying, training, entrusting, supervising, and/or retaining." (Compl. ¶ 153.) At the threshold, Virginia does not recognize causes of action for negligent qualifying, training, and supervision.[9] *See A.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 475 (Va. 2019) (affirming lower court's dismissal of negligent supervision claim because it does not exist in Virginia); *Allen v. Barksdale*, No. 5:25-cv-00001, 2025 WL 1809322, at *5–6 (W.D. Va. July 1, 2025) (dismissing negligent supervision and training claims because they are not causes of action under Virginia common law); *Pollard v. Howdeshell*, No. CL23-764, 2024 WL 3654651, at *3 (Va. Cir. Ct. Aug. 5, 2024). Therefore, the court will only analyze Wells's claims for negligent hiring, entrustment, and retaining.

To establish a negligent-hiring claim, a plaintiff must allege "that an employee's propensity to cause injury to others was either known or should have been discovered by reasonable investigation." *Majorana v. Crown Cent. Petroleum Corp.*, 539 S.E.2d 426, 432 (Va. 2000). Likewise, negligent entrustment depends on "whether the owner [of a vehicle] knew, or had reasonable cause to know, that he was entrusting his [vehicle] to an unfit driver likely to cause injury to others." *Denby v. Davis*, 188 S.E.2d 226, 229 (Va. 1972); *Kingrey v. Hill*, 425

[9] The court has also found no indication that negligent qualifying is a legitimate cause of action, or that Virginia courts have analyzed a claim by that name. Wells argues that it is not necessary to determine whether these are viable independent causes of action at the pleading stage. (Pl.'s Opp'n at 15.) But a motion made under 12(b)(6) is intended to "'test the sufficiency of the complaint.'" *Kearney v. Blue Cross and Blue Shield of N.C.*, 233 F. Supp. 3d 496, 505 (M.D.N.C. 2017) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint can fail at this stage when it "fail[s] to state a valid legal cause of action, *i.e.*, a cognizable claim." *Id.* (citing *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012)). At this stage, the court has a responsibility to determine whether negligent qualifying, training, and supervision are recognized causes of actions in Virginia. They are not. Insofar as Wells has alleged any facts related to DSI's negligent qualifying, training, and supervision, they will be addressed under the analyses for the negligent hiring, entrusting, and retaining claims.

S.E.2d 798, 799 (Va. 1993) ("Liability under the doctrine of negligent entrustment requires that the owner of the instrumentality used to inflict injury knew, or had reasonable cause to know, that he was entrusting the instrumentality to a third person who was likely to use it in a manner that would cause injury to others."). And negligent retention imposes liability on the employer who "retain[s] a dangerous employee who the employer knew or should have known was dangerous and likely to harm [others]." *Sutphin v. United States of American Ins. Co.*, 154 F. Supp. 2d 906, 908 (W.D. Va. 2000) (quoting *Se. Apartments Mgmt., Inc. v. Jackman*, 513 S.E.2d 395, 397 (Va. 1999)). For negligent retention, a plaintiff must make "an amplified showing that both the nature and gravity of the risk render unreasonable any mitigating response short of termination." *Doe v. Baker*, 857 S.E.2d 573, 582 (Va. 2021) (quoting *A.H.*, 831 S.E.2d at 474). In sum, these three causes of action require the plaintiff to establish that a defendant-employer had knowledge, or should have had knowledge, that an employee was likely to cause harm.

Wells has not alleged any such knowledge on DSI's part. Rather, she conclusively states only that DSI breached its "duty to act reasonably in connection with the hiring, qualifying, training, entrusting, supervising, and retaining." (Compl. ¶¶ 152–153.) In fact, she all but concedes this deficiency in her Opposition. (Pl.'s Opp'n at 13, 15 ("The specific nature of the unfitness or incompetence is a question of fact to be developed through discovery."; "Whether DSI acquired knowledge during Harris's employment that he posed a grave risk to others, and whether DSI failed to terminate him despite that knowledge, are factual questions for discovery.").) Despite Wells's limitations on access to DSI's internal records or other relevant materials, her conclusory statements are insufficient to state a claim at this stage. *Iqbal*, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical,

code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Because Wells has failed to allege that DSI knew or should have known of Harris's likelihood to cause harm, she has failed to state a claim for negligent hiring, entrustment, and retaining.

## IV. CONCLUSION

For these reasons, the court will grant Defendants' motion to dismiss as to Wells's claims of willful and wanton negligence against Harris and DSI (contained within Counts 5 and 6) and as to Wells's claims of direct negligence against DSI (Count 8) in its entirety.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 23rd day of September, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE